UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN ANDERSON                                    Case No.: 12- cv-01756-JSM-map

      Plaintiff

v.

STIEFEL ALUMINUM, INC. a Foreign
Corporation, and, ROBERT RILEY,
an individual,

      Defendants.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW

Defendants, Stiefel Aluminum, Inc. and Robert Riley ("Defendants"), by and through

their undersigned counsel, for their Response to Plaintiff's Motion for Award of Attorneys' Fees

and Costs and Incorporated Memorandum of Law, state as follows:

## SUMMARY

As equitable under the circumstances and in correlation to his "degree of success,"

Defendants asks this Court to make an award of attorney's fees and costs substantially below what

counsel for Plaintiff seeks.  Plaintiff's Motion makes significant misrepresentations regarding the

course of the instant litigation.  Both Plaintiff's Complaint and his responses to this Court's

interrogatories make clear that Plaintiff initially (and throughout this litigation) sought $79,464

plus attorney's fees because of his counsel's insistence that Defendants pay time-and-a-half for

overtime as opposed to half-time.  Defendants offered full settlement at $8,800 plus attorney's fees

from the very beginning of this lawsuit.  As such, counsel for Plaintiff's pursuit of unnecessary

litigation needlessly increased Plaintiff's legal fees, a practice of driving up attorneys' fees and

costs which this Court should not reward. After months of litigation, Defendants have finally convinced Plaintiff to settle for the proper (half-time) valuation. Accordingly, Defendants turn to this Honorable Court to make a fair award of attorney's fees considering these circumstances. Based on Plaintiff's counsel's highly-limited degree of success and unnecessary protraction of this litigation, the lodestar amount should be reduced to 11% of the amount sought.

## **<u>FACTS</u>**[1]

The realities of litigation under the Fair Labor Standards Act tend to make settlement a more economically viable option for defendants than litigating a claim through trial, or even, at times, through summary judgment. Based on the economics of such a claim, Defendants had no interest in gaining a costly moral victory in the instant case despite Defendants compliance with the law. Plaintiff worked for a number of years for Defendants in varying roles such as wheel cleaner, furnace operator, and finally as Production Superintendent. Defendants paid Plaintiff an hourly rate, including time and a half for all hours worked over 40 in a workweek, until his final five months of employment. At that time, Defendants properly classified Plaintiff as exempt. In this regard, when Defendants' former Production Superintendent was promoted to Plant Manager in early 2011, he promoted Plaintiff to be his Production Superintendent. Along with Plaintiff's promotion and classification as an exempt employee within the meaning of the FLSA, came an increase in pay in the form of a salary of $800 per week.[2]

From the beginning of this litigation, Defendants' position has been that Plaintiff

---

[1] The parties have also resolved a whistleblower lawsuit brought in the Circuit Court of The Sixteenth Judicial Circuit In And For Pasco County, *John Anderson v. Stiefel Aluminum, Inc.,* Case No. 12-CA-5630-WS. Plaintiff improperly attempts to claim certain fees and costs from that case as applicable to the instant motion, as discussed below.

[2] In his deposition, Plaintiff claimed that this raise was a good thing for him. (Pl. Depo. Tr. 79:16-17; 187:22-188:3). He also admitted that he understood this salary covered all of the hours that he worked. (Pl. Depo. Tr.79:2-4 "Q. So, you only received $800 for all the hours that you worked, right? A. Yes"). *See* Excerpts, attached as <u>Exhibit A</u>.

performed supervisory and other administratively exempt duties, and was therefore exempt from overtime under Section 13(a)(1) of the Fair Labor Standards Act. Plaintiff was responsible for hiring, firing, and disciplining employees, as well as supervising the production floor employees. *See*, *e.g*., Disciplinary forms attached as <u>Exhibit B</u>. Other than Plaintiff himself, every witness corroborated these facts, including the written discipline authored and signed solely by Plaintiff. Indeed, only Plaintiff's self-serving deposition testimony countered the strong evidence establishing that Plaintiff was, in fact, a supervisor. *See, e.g.,* Pl. Depo. Tr. 114:1-117:9, attached as <u>Exhibit C</u> (Plaintiff claiming that he did not actually supervise, but merely filled out forms as required of him by the Plant Manager).[3]

Despite the clear evidence that Plaintiff was exempt, Defendants made the business decision that many businesses make – namely, offering to settle the lawsuit at the full amount of hours Plaintiff claimed that he worked.[4] Defendants' valuation of this potential misclassification case included dividing the $800 salary paid to Plaintiff by the alleged 84 hours of work per week, and arriving at the regular rate of $9.52 per hour. Because Plaintiff had been compensated at straight time for the alleged 44 hours of overtime worked in each workweek, he would need to be compensated at a half-time rate of $4.76 for each hour of overtime if he had been misclassified as exempt. *See Lamonica v. Safe Hurricane Shutters, Inc*., 711 F.3d 1299, (11th Cir. Mar. 6,

---

[3] While getting approval from a higher-ranking company official will not preclude a white collar exemption (*see* 29 C.F.R. §541.207(e) (The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion…")), Defendants could not predict whether Plaintiff's self-serving and false testimony would be enough to create an issue of material fact precluding summary judgment and requiring a trial in the instant matter.

[4] For the few months Plaintiff was promoted to an exempt position, Defendants did not keep track of his hours worked. Defendants are not required to keep track of the hours of its exempt employees, and there has been no discussion between the parties of the record-keeping requirement as applied to the instant case. Although Plaintiff's Motion attempts to make the difficulty in settlement appear to be based on a dispute over the hours Plaintiff worked, Defendants have always offered to settle this case at the amount of hours claimed by Plaintiff.

2013) (describing the half-time method). Multiplying the half-time rate times the number of overtime hours alleged times the 21 weeks of exempt employment, Defendants utilized the fluctuating workweek method to arrive at the amount of $4,400 in overtime pay, totaling $8,800 with liquidated damages.

In negotiations between counsel, and at an early mediation prior to the taking of any depositions, Defendants offered to settle for this full half-time valuation, including the payment of all attorney's fees accrued to date. In fact, Defendants' highest offer to settle (at the October 2012 mediation) was $25,000, inclusive of fees and costs – Plaintiff's assertion that the highest amount offered was $10,000 is false. What prevented settlement of the instant lawsuit at all stages of litigation was Plaintiff's long-held and improper valuation of this misclassification case because he calculated his damages based on time-and-one-half valuation. From the filing of this lawsuit in August 2012 through May 2013 (including for a number of weeks after Plaintiff's March 2012 deposition wherein he admitted his salary covered all hours worked),[5] Plaintiff refused to accept anything less than time-and-a-half valuation (or approximately $80,000) to settle this case.

Despite Plaintiff's claims to the contrary in his Motion, Defendants proffer that after numerous discovery responses and depositions, Plaintiff eventually understood the weaknesses of his case. Accordingly, Plaintiff agreed to drop his settlement valuation to approximately 11% of what he had been seeking (which is noteworthy considering the amount of time counsel for Plaintiff spent researching exemptions and the fluctuating

---

[5] Throughout this litigation, Defendants could not do an offer of judgment to moot the case because of the disagreement in proper valuation between half-time and time-and-a-half. Although Plaintiff's deposition made the valuation certain under any legal standard utilized in the Eleventh Circuit as discussed more fully below, counsel for Plaintiff still did not agree that this would be a full satisfaction.

workweek and reviewing the case file in the final month of litigation). The parties subsequently agreed to settle for $4,400.00 in alleged back pay for overtime, which includes pay at an overtime rate (at half-time) for all of the hours in question, as well as an equal amount in liquidated damages, and agreed to allow this Court to determine the appropriate amount of attorney's fees. Counsel for Plaintiff's representation that Defendants did not offer $8,800 until May 31, 2013 is wholly inaccurate - this is the exact settlement amount offered by Defendant starting from the initiation of the lawsuit. *See* August correspondence, attached as Exhibit D (offering $15,754.16 prior to any significant litigation and prior to the October mediation). Because Defendants offered to resolve this case for this amount from the beginning of the lawsuit, all of the subsequent litigation was unnecessary. Accordingly, Plaintiff should only be entitled to an award of 11% of the attorney's fees now sought.

## ARGUMENT

### A. Plaintiff's Valuation, and Thus Additional Litigation, Was Unreasonable

Assuming *arguendo* that Defendants misclassified Plaintiff as exempt (which Defendant does not concede), Plaintiff would be entitled to an overtime rate equivalent to half of his regular rate for all hours worked over 40 in a workweek. This method of calculating damages based on the fluctuating workweek (or half-time rate) has been endorsed by the Department of Labor, the Eleventh Circuit, and is consistently utilized by District Courts in Florida. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. Mar. 6, 2013) ("[I]f the jury determined that Appellees' salaries were intended to compensate all hours worked, it should have determined that they were already partially compensated for their overtime hours at their regular rate of pay and merely awarded an overtime premium at half that rate.");[6] *Rodriguez v. Farm Store*

---

[6] On May 29, 2013, counsel for Plaintiff sent counsel for Defendant authority from outside the

*Groceries*, 518 F.3d 1259 (11th Cir. 2008).

The FLSA generally requires employers to pay time and half the regular rate for all of the work performed over forty hours in a workweek, except for employees subject to the white collar exemptions. *See* 29 USC §207(a)(1), 213(a)(1); *Rodriguez*, 518. F.3d at 1263. To calculate the regular rate of pay, one would divide the salary paid by the number of hours the employee's pay is intended to compensate. *See id*. at 1269; *see also* 29 C.F.R. §778.113(a). Where an employer fails to pay an employee proper overtime, and the employee is paid a constant weekly salary for fluctuating hours, "the Supreme Court has found it acceptable to calculate the regular rate by dividing that weekly salary by the number of hours actually worked. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)." *Lamonica*, 711 F.3d at 1311. The DOL's interpretive rule 29 C.F.R. §778.114 explains that the fluctuating workweek method to calculate the employee's regular rate of pay includes "payment for overtime hours at <u>one-half such rate</u> in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement." (emphasis added); *see also Lamonica*, 711 F.3d at 1311 (holding that if the jury determined the "salaries were intended to compensate all hours worked, it should have determined that [plaintiffs] were already partially compensated for their overtime hours at their regular rate of pay and mere awarded an overtime premium at <u>half that rate</u>") (emphasis added).

In prior discussions, counsel for Plaintiff relied on *West v. PDS Technical Svcs., Inc*., Case No. 8:08-cv-12325 (M.D. Fla. Jan. 21, 2011) for the proposition that the fluctuating

---

Eleventh Circuit to support a time and a half calculation, along with the note "Happy birthday. Here is another present, recent law on why your client will NOT be entitled to the 1/2 time FWW, calculation." In response, counsel for Defendant sent the *Lamonica* decision. This demonstrates that it was counsel for Plaintiff, and not Defendant, that held up settlement based on the valuation of the claim.

workweek method would not apply to the instant case.  However, that court only found that where the salary was not fixed, the hours were fixed, and the regular rate was below minimum wage, the fluctuating workweek method would not apply.  *See id*.  This is the exact opposite of the facts at issue in the instant case.  Moreover, the *West* court specifically stated "[t]here can be no doubt that under certain circumstances, overtime payment using the half-time approach is entirely appropriate. 'Virtually every court that has considered the question has upheld the remedial use of half-time in failed exemption cases.'" *Id*. (quoting *Torres v. Bacardi Global Brands Promotions, Inc*., 482 F.Supp.2d 1379, 1381, n.2 (S.D. Fla. 2007)).

As noted above, Plaintiff admitted in his deposition that his salary was intended to cover all of the hours that he worked.  Accordingly, the only proper calculation for his damages is to apply the fluctuating workweek method described above, dividing his salary by the number of hours worked to arrive at his regular rate, and multiplying half of his regular rate times the number of hours worked over 40.  This is the settlement calculation Defendant first proposed to Plaintiff at the beginning of the case, and this is the calculation that the parties finally agreed upon after nearly nine months of litigation.

This is not the type of case where a plaintiff made a pie-in-the-sky demand hoping to negotiate for a more reasonable resolution at some point in the future.  Instead, this was a case where counsel for Plaintiff doggedly hung to an improper valuation of the claim for nine months, up until two days prior to the actual attainment of settlement between the parties.  Despite having valid challenges to Plaintiff's claim of entitlement to any amount of money, Defendants have consistently sought to settle the instant case for the proper valuation noted above.  Now that this case has settled for this amount, Defendants should not be punished for Plaintiff's unnecessary pursuit of an unreasonable claim.

**B. Plaintiff's Counsel's Fees Should be Reduced Based upon the Results Obtained**

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). After determining the "Lodestar" the fees may then be adjusted in accordance with the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). As demonstrated below, Plaintiff's attorneys' fees should be reduced based upon the results obtained in the instant case.

The Supreme Court noted that "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436 (1983). "The most important factor to consider is the result obtained." *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008) (*citing Hensley*, 461 U.S. at 436). "If the success was limited or the plaintiff's victory was limited, the lodestar must be reduced to reflect the limited result." *Powell*, 547 F. Supp. 2d at 1286 (citing *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)).

"When a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the modified lodestar amount)." *Roldan v. Pure Air Solutions, Inc.*, Case No. 07-22203, 2010 U.S. Dist. LEXIS 12779 (S.D. Fla. Jan. 29, 2010) (*citing Hensley*, 461 U.S. at 435). "However, '[i]f…a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* In the instant case, Plaintiff has achieved only minimal or partial success in the litigation recovering approximately 11% of his initial amount claimed. In *Roldan*, the court ordered an 85% reduction in an FLSA fee request due to limited success at trial. *Roldan*,

2010 U.S. Dist. LEXIS at 20. Similar to the court in *Roldan*, this Court should order at least an 85% reduction in the FLSA fee request due to the limited success of Plaintiff's attorneys.

In *Andriello v. CFI Sales & Mktg.,* Case No. 6:09-CV-208-Orl-36GJK, 2012 U.S. Dist. LEXIS 112671 (M.D. Fla. Aug. 10, 2012), "[t]he Magistrate reduced the lodestar by 70% in large part because of the "very limited results" that Plaintiffs achieved. As the Magistrate noted, Plaintiffs prevailed…for just 3% of the damages sought." *Id*. at 12. (noting "[h]aving settled for 3% of the amount of damages originally requested, it is difficult to understand why Plaintiffs believe the claims were properly valued initially"). It is a logical conclusion that similar to the lawyers in *Andriello*, Plaintiff's counsel did not properly value the claims or they did not properly counsel their client.

Similarly, the *James v. Walsh Depot Holdings, Inc.*, 489 F.Supp.2d 1341 (S.D. Fla. 2007), decision cited by Plaintiff in his Motion supports Defendant's argument. In that case, the court reduced the lodestar amount by 50% based on the degree of success. The *James* court noted that the lodestar method replaced the *Johnson* factors and that a plaintiff has the burden to demonstrate entitlement to the fees. The *James* court further noted that a court could reduce fees where a plaintiff lacks adequate documentation, and that a court could exclude "hours that are excessive, redundant, or otherwise <u>unnecessary</u>." *Id*. at 1347 (emphasis added). A court has the discretion for an equitable adjustment for time spent in the pursuit of unsuccessful claims. Also, "[t]he most important factor to consider is the result obtained." *Id*. In the instant case, the exact cause of extended litigation was Plaintiff's pursuit of the unnecessary damage claim of $80,000, and the result obtained of $8,800 demonstrates how unreasonable Plaintiff was in the pursuit of this amount. Much like the court in *James*, this Court should make a significant reduction to Plaintiff's lodestar amount.

In *Wales v. Berry*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001), fifty-one plaintiffs recovered approximately fifteen percent of the amounts they had sought and yet plaintiffs' counsel asserted that they "achieved an excellent result." The court in *Wales* noted that the plaintiffs' counsel's assertion "is questionable with respect to the case as a whole, and it is certainly not true with respect to the FLSA count." *Id.* In the instant case, Plaintiff has made similar remarks in his Motion. This Court should similarly reduce Plaintiff's request for an award of attorneys' fees for not attaining an excellent result and for causing the unnecessary time and attorney's fees in the instant matter.

Plaintiff originally stated that "he worked approximately 1,324.40 (sic) of overtime hours during the period of March 2011 until his termination in October of 2011. Therefore, he is owed approximately $39,732.00, plus liquidated damages, totaling $79,464.00 in compensation owed." [D.E.1]. Plaintiff ultimately settled the case for $8,800.00. Thus, Plaintiff received $70,664.00 less than what he originally demanded in his Complaint (and Answers to Court Interrogatories, [DE 11]). Yet, Plaintiff claims throughout his Motion that he "secured a settlement that awards him arguably all of his unpaid wages that he is owed," "leading to the Defendant agreeing to tender to Plaintiff 100% of the wages owed to Plaintiff without compromise on the sums owed," and claims that "Plaintiff was able to convince Defendant to pay him one hundred percent (100%) of what it contends Plaintiff is owed." *See* Plaintiff's Motion, p.7. Thus, if Plaintiff admits that $8,800.00 fully compensates him for the hours he worked (which Defendants agree would be the proper valuation if Plaintiff were misclassified and actually worked the hours that he claimed), Plaintiff's counsel must necessarily have miscalculated the appropriate worth of the case when filing the original Complaint, responding to interrogatories, and in every other respect until finally agreeing to settle the case for the proper valuation.

Plaintiff's inflated amount in controversy protracted this litigation and significantly expanded the amount of attorneys' fees incurred by Plaintiff (and Defendants). Throughout this litigation, Plaintiff has insisted upon calculating damages using a time and a half methodology whereas Defendants have asserted that a fluctuating work week half-time rate calculation is the appropriate methodology to use. Defendants vehemently contested Plaintiff's theory of the case throughout this litigation and did not waiver from their assertion that the fluctuating work week methodology should be used for the damages calculation. Plaintiff ultimately agreed to accept the fluctuating workweek half-time rate damage calculation and thus settled for $8,800.00. Plaintiff did not receive 100% of the amount requested using the time-and-a-half calculation that Plaintiff asserted until the bitter end should have been used.

In *Powell*, the court noted that "Plaintiffs' counsel's unrealistic and legally unsupportable damage calculations derailed settlement negotiations prior to suit…[s]uch actions require a reduction in the attorneys' fee award." *Powell*, 547 F. Supp. 2d at 1286-87. In the instant case, Plaintiff's counsel's damages calculation likewise has led to a needless increase in the amount of attorneys' fees accrued and should be reduced similar to the result in *Powell*. The fact that Plaintiff's counsel originally calculated the damages at $79,464.00 and yet Plaintiff admits that $8,800.00 fully compensates him for his injuries is proof that Plaintiff's counsel incorrectly valued the case.

Plaintiff's counsel's attorneys' fees should be reduced in accordance with the degree of success obtained through settlement. Defendants are shocked that this case proceeded for nearly a year only to settle at the initial valuation offered by Defendants in a lawsuit where only a matter of weeks of pay were at issue. Plaintiff's success was extremely limited and thus the lodestar should be significantly reduced. This lodestar should be reduced to an amount

commensurate in relation to the results obtained, *i.e.* 11% of the amount claimed. *See Hensley*, 461 U.S. at 440.

### C. Plaintiff's Counsel's Lodestar Includes Time Not Spent on The Instant Action

A review of the costs and time entries attached to Plaintiff's Motion (Exhibit 4) demonstrates that a number of the entries do not relate to this lawsuit. For example, the time entries include "9/17/12 Receipt and review: of Motion to Dismiss (2.5 hours)." [DE 29-4, p. 29]. As made clear by the docket, Defendants never filed a motion to dismiss in the instant case. Also, "3/21/2013 Attend client's deposition (4.5 hours)," [*id*. at p. 24], and the costs for Plaintiff's deposition transcript [DE 30-3, p. 11], relate to a deposition taken in the whistleblower lawsuit and should not be assessed against the instant case.

Moreover, counsel for Plaintiff makes numerous entries for researching "FWW," or the fluctuating workweek method. This research occurred both at the beginning and the end of this litigation. Counsel exchanged numerous legal memoranda on this issue because it was the sole cause of preventing settlement for nearly nine months. Although the Eleventh Circuit did issue the *Lamonica* decision in March 2013, the opinion did not signify a change in controlling case law, but rather an affirmation that half-time was the appropriate damages measure in the instant case, especially considering Plaintiff's admission that his salary was to cover all of the hours worked. Accordingly, any time spent in the pursuit of unreasonable claims (*i.e.*, time and a half valuation) should be excluded.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court significantly reduce the lodestar to 11% of the amount sought (or $6,999.30, down from the $63,630.00 current

sought), as well as the other reductions notes above, based on Plaintiff's counsel's lack of success and unnecessary litigation in this matter.

Respectfully submitted,

JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131-2374
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

By: _s/ David M. Gobeo_____
   Jenna Rinehart Rassif, Esq. (56855)
   E-mail: jenna.rassif@jacksonlewis.com
   David M. Gobeo, Esq. (16565)
   E-mail: david.gobeo@jacksonlewis.com

Dated:   July 8, 2013

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of July, 2013, I certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via electronic mail.

s/ David M. Gobeo_____
David M. Gobeo, Esq.

## SERVICE LIST

Mitchell L. Feldman, Esq.
mfeldman@ffmlawgroup.com
Robert K. Tucker, Esq.
rtucker@ffmlawgroup.com
FELDMAN FOX MORGADO PA
501 North Reo Street
Tampa, FL 33609
Telephone: 813-639-9366
Fax: 813-639-9376
Counsel for Plaintiff

Jenna Rinehart Rassif, Esq. (56855)
E-mail: jenna.rassif@jacksonlewis.com
David M. Gobeo, Esq. (16565)
E-mail: david.gobeo@jacksonlewis.com
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-577-7600
Facsimile:   305-373-4466
Counsel for Defendants

4826-1429-1732, v.  1