UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN ANDERSON,                       Case No.:  12-cv-01756-JSM-map

        Plaintiff,

v.

STIEFEL ALUMINUM, INC. a Foreign
Corporation, and, ROBERT RILEY,
an individual,

        Defendants.

_____/

## PLAINTIFF'S AMENDED MOTION FOR RECONSIDERATION AND REHEARING AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, JOHN ANDERSON, by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 59(e), files his Amended Motion for Reconsideration and Rehearing and Incorporated Memorandum of Law[1], and states as follows:

## FACTUAL BACKGROUND

1. On August 3, 2012, Plaintiff filed his Complaint against Defendants under the Fair Labor Standards Act ("FLSA") in which he alleged that he was unlawfully misclassified as an exempt employee by the Defendants resulting in unpaid overtime wages that he was otherwise entitled to. [DE #1]

2. In response to the Plaintiff's Complaint Defendants filed an Answer in which they denied that they owed Plaintiff overtime compensation pursuant to the FLSA because they believed that Plaintiff performed supervisory and other administratively exempt duties.  [DE # 8]

3. As a result of the misclassification, Plaintiff calculated his damages to be roughly $80,000.00 based upon the 31.3 weeks that he was misclassified in which he worked

---

[1] The Amended Motion is filed for the purpose of including a Local Rule 3.01(g) certification.

approximately 44 hours of overtime each week for $800.00 per week.

4.    Plaintiff's overtime rate calculations were based upon the time-and-a-half method of valuation because, as more fully discussed below, the Defendants did not meet all of the conditions needed to apply the fluctuating workweek ("FWW") method of valuation pursuant to 29 C.F.R. § 778.114(a).

5.    On August 31, 2012, using the FWW method of valuation which applies a half-time pay rate to any overtime hours worked, Defendants offered Plaintiff $6,702.08 in overtime hours, $6,702.08 in liquidated damages, and attorney's fees and costs in the amount of $2,350.00 for a total offer of $15,754.16.

6.    Plaintiff rejected the August 31, 2012 settlement offer because, among other things, there was no basis in law or fact to apply the FWW and Plaintiff's attorney's fees and costs were $8,750.00[2], which were not accounted for in the settlement offer, and would have left Plaintiff with $7004.16, less than what Plaintiff ultimately settled for. *See* email correspondence between Plaintiff's and Defendants' counsel on August 31, 2012. [DE 32-4].

7.    Because a resolution was not reached, the parties proceeded to litigate the issues of the case, which included but were not limited to, the issue of Plaintiff's exempt status under the FLSA which the Defendants aggressively defended against, the hours worked by Plaintiff, and the proper method of valuation of Plaintiff's damages.

8.    Over the course of the next nine months, Plaintiff's counsel zealously prosecuted Plaintiff's claim by engaging in written discovery, requests for production of documents, serving subpoenas upon third party vendors, interviewing witnesses and taking the depositions of Defendants' present and former employees and officers.

---

[2] The attorney's fees and costs were based upon Plaintiff's counsel, Mitchell Feldman's, regular hourly rate of $395.00 which has been awarded to him in the past and is his standard rate.  Mr. Feldman regularly negotiates down his regular hourly rate during settlement negotiations. *See* Affidavit of Mitchell L. Feldman [DE 30].

9.     Defendants could have easily stipulated to Plaintiff's exempt status and hours worked thereby making the only issue in the case the proper method of valuation whereby the parties could have filed motions for summary judgments.  This would have saved all the parties and the Court, added fees, costs and unnecessary time wasted.

10.     However, Defendants doggedly hung onto to their defenses, disputing, every step of the way that Plaintiff was a non-exempt employee and disputing the hours Plaintiff claimed that he worked.

11.     Litigation revealed to the Plaintiff's counsel that not only was Plaintiff a non-exempt employee but that he worked the hours that he claimed he worked from the inception of the case.

12.     On May 31, 2013, despite the Plaintiff's counsel determination that discovery had borne out that he had a strong case, which was ripe to be tried in front of a jury, Plaintiff found himself in dire financial straits whereby he determined that accepting a settlement offer, even if not for the amount claimed, was in his, and his family's, best interests.

13.     As such, Plaintiff agreed to accept the settlement offer of $8,800.00 and the parties agreed to have the Court determine the appropriate attorney's fees and costs due to the Plaintiff's counsel which are mandatory to the prevailing plaintiff under the FLSA.

14.      On June 20, 2013, Plaintiff filed his Motion for Award of Attorney's Fees and Costs [DE # 29] in which he asked the Court to award him attorney's fees in the amount of $63,630.00 and costs in the amount of $8,522.49.

15.     On July 8, 2013, Defendants filed their Response to Plaintiff's Motion for Award of Attorney's Fees and Costs [DE # 32] in which they made numerous representations to the Court, many of which are false and/or taken out of context, in which they asked the Court to

reduce the lodestar to 11% of the amount sought, or $6,999.30, because Plaintiff did not accept an initial settlement offer of $8,800.00 based on the fluctuating workweek valuation of Plaintiff's overtime rate.[3] Defendants offer no proof or support for their assertion that an offer of $8,800.00 plus attorney's fees and costs was ever offered to Plaintiff in the early stages of this litigation.

16.     In their Response to Plaintiff's Motion for Attorney's Fees and Costs, Defendants make the unfounded claim that Plaintiff should have applied the FWW to calculate his damages and accepted their settlement offer at an early stage of litigation, even though there was no basis in law or fact to apply the FWW as its application requires a fact intensive inquiry. Moreover, Defendants mislead the Court by citing to one response given by the Plaintiff to the question of whether he understood that his salary covered all of the hours that he worked. The Plaintiff's answer is taken completely out of context as his agreement with the Defendants when he was paid a salary was that he would be compensated for all of the hours worked based on a fifty (50) hour work week. *See* Declaration of Plaintiff, John Anderson, at ¶8 attached as **Exhibit "A."**

17.     Moreover, in their Response Defendants boldly tell the Court that they "…finally convinced Plaintiff to settle for the proper (half-time) valuation." Nothing could be further from the truth. Plaintiff's decision to accept Defendants' settlement offer was not the result of being convinced that the FWW was the proper method of valuation.[4] Rather, his decision to accept the Defendants' settlement offer was the result of economic realities which stemmed from the Defendants' decision to misclassify him as an exempt employee under the FLSA. *See* Declaration of Plaintiff, John Anderson, at ¶13.

---

[3] Plaintiff filed an Unopposed Motion for Leave to File a Reply to Defendants' Response [DE #33] with the goal of rebutting some of Defendants' assertions in their Response and providing the Court with additional documentation that puts this case in the proper context. However, the Court denied said Motion as moot and appears to have relied upon Defendants' Response and the documents attached to same in entering its final order and judgment.

[4] *See* email correspondence from Plaintiff's counsel dated May 29, 2013, attached as **Exhibit "B,"** "Mr. Anderson [Plaintiff] will consider $8800 as a settlement, but I know this is less than half of what he is owed, considering time and a half and double in liquidated damages."

18.     Nonetheless, on July 15, 2013, this Court entered an Order [DE # 34] awarding the Plaintiff $7,175.00 in attorney's fees, over an 88% reduction of the attorney's fees incurred, and reducing the costs awarded from $8,522.49 to $535.55.

19.     The basis of the Court's Order was that "Plaintiff's counsel applied a legally unsupported valuation of Plaintiff's damages…" and that "Plaintiff's initial valuation of damages in this case and thus, additional litigation, were unreasonable." Essentially, the Court summarily ruled that the FWW applied without any evidentiary hearing and without any factual basis. Moreover, the Court states that the Plaintiff's counsel should have understood by August 31, 2012, prior to any discovery being conduct and prior to the Defendants even filing an Answer in this case, which did not occur until October 22, 2012 [DE #8], that the half-time method applied even though the only evidence Plaintiff had that the FWW applied was the Defendants' self-serving assertions that Plaintiff should be compensated at a half-time rate.

20.     Plaintiff now brings this Motion for Rehearing, pursuant to Fed. R. Civ. P. 59(e), to correct clear error or manifest injustice because, among other reasons, the Plaintiff's initial valuation of damages was not unreasonable and was supported by clear legal precedent.

## MEMORANDUM OF LAW

### I.     Legal Standard

It is within the Court's discretion to grant a motion for reconsideration. *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990). Federal Rules of Civil Procedure 59(e) and 60 govern motions for reconsideration. *Ludwig v. Liberty Mut. Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 37718, at *6 (M.D. Fla. Mar. 30, 2005). The time when the party files the motion determines whether the motion will be evaluated under Rule 59(e) or Rule 60. *Id.* A Rule 59(e) motion must be filed within 28 days after the entry of the judgment. Motions filed after the 28-

day period will be decided under Federal Rule of Civil Procedure 60(b). Argument in favor of granting reconsideration must be balanced against the desire to achieve finality in litigation. *Id.* "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Fla. College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). There are three (3) grounds to justify reconsideration of a prior order under Federal Rules of Civil Procedure 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Fla. College of Osteopathic Med., Inc.*, 12 F. Supp. 2d at 1308.

## ARGUMENT

**II.**     **Plaintiff's Counsel Applied A Legally Supported Valuation Of Plaintiff's Damages And Plaintiff's Rejection Of Any Settlement Offers Based On A Half-Time Rate Was Reasonable.**

### A. The Fluctuating Work Week Does Not Apply Here

We begin with the well-known proposition that the provisions of the FLSA are to be liberally construed in favor of an employee. *See Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207 (1959). The FLSA provides that a non-exempt employee is to be paid at no less than one and one-half times the regular hourly rate for hours worked in excess of 40 per week. *29 U.S.C. § 207(a)*. The FWW formula was designed as an alternative method of demonstrating compliance with the FLSA, and not as a retroactive remedy for non-compliance, and is subject to numerous requirements. The FWW method is not intended to apply retroactively in a misclassification case. *See Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 666 (7th Cir. 2010) (stating that 29 C.F.R. § 778.114 is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer breached its statutory

obligations).  Moreover, because the regulation was adopted without formal rule-making, it is entitled to less deference.  *See Christensen v. Harris Co.*, 529 U.S. 576 (2000).  As stated by the Fourth Circuit, "section 778.114 does not represent an 'exception' to the FLSA.  It merely provides an alternative means by which an employer can determine its employees' regular and overtime rate of pay."  *Flood v. Hanover Cty.*, 125 F.3d 249, 252 (4th Cir. 1997).

29 C.F.R. §778.114(a) provides in relevant part:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or for some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

Under *29 C.F.R. §778.114*, the fluctuating workweek method of calculating compensation is used **only** if the following requirements are met:

i.      The employee's hours must fluctuate from week to week;

ii.     The employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

iii.    The fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and

iv.     The employer and employee must share a "clear mutual understanding" that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

v.      The employee receives a fifty percent overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.[5]

Because paying the fluctuating workweek creates incentives directly opposite to those

---

[5] *West v. Verizon Servs. Corp.*, 2011 U.S. Dist. LEXIS 5952, 30–31 (M.D. Fla. Jan. 21, 2011), *citing Davis v. Friednly Express, Inc.*, 61 Fed. App'x 671 (11th Cir. 2003).

Congress intended in establishing the FLSA's overtime requirement – financial incentives to reduce overtime hours and spread employment[6] - courts have consistently held that the requirements of 778.114 are independent prerequisites to the application of the FWW.[7] Likewise, because they protect the FLSA's remedial policies, the prerequisites to using the FWW must be narrowly construed against employers.[8]

### B. Defendants Fail To Meet Four Out Of Five Conditions For The FWW To Apply.

Despite failing to meet at least four out of the five requirements, the Court, in its July 15, 2013 Order, found that Plaintiff's counsel should have understood by August 31, 2012 that the half-time method was applicable. However, even today, after 9 months of litigation, it is clear that Defendants have failed to meet "all the legal prerequisites" for use of the FWW as required under 29 C.F.R. §778.114(c). First, the FWW is not applicable to this case because no "clear mutual understanding" can be demonstrated. In approximately May of 2011, Plaintiff agreed to switch from being paid an hourly wage to a salary of $800.00 per week with the understanding that he would be working 50 hours per week. *See Declaration* of John Anderson at ¶9. In fact, Defendants' own employees, including Plaintiff's direct supervisor Robert Riley, admitted in their depositions that Plaintiff was supposed to work from 7:00 a.m. to 5:00 p.m. [9] Contrary to

---

[6] The Act was intended to tackle the twin evils of "overwork" and "underpay." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942).

[7] *See Condo v. Sysco Corp.*, 1 F. 3d 599, 601–02 (7th Cir. Ill. 1993); *see also Davis v. Friendly Exp., Inc.*, No. 02-14111, 2003 WL 21488682, at *1 (11th Cir. 2003); *see also Griffen v. Wake Cty.*, 142 F.3d 712, 715 (4th Cir. 1998); *see also Stokes v. Norwich Tax, LLC*, 289 Conn. 465, 958 A. 2d 1195 (2008).

[8] *See, e.g. Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950). Indeed, because this method undercuts the FLSA's purposes by creating incentives for long work weeks and disincentives for spreading employment, the FWW should be strictly construed like other exceptions. *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 56 (1983) ("In resolving the ambiguity in the language of the [law], we decline to construe that language so as to produce a result at odds with the purposes underlying the statute. Instead, we interpret the language of the statute in a way that will further Congress' overriding objective.").

[9] Deposition of Robert Riley Tr. 135:21-23 "Q. Did he [Plaintiff] have a set schedule? A. Yeah, he was supposed to have been 7:00 to 5:00 every day." See Excerpt, attached as **Exhibit "C."**

the mutual understanding that Plaintiff would be working the above set schedule, Plaintiff began working in excess of 80 hours every week which was never contemplated by Plaintiff when he agreed to switch to salary. Therefore, Defendants' assertion that Plaintiff admitted in his deposition that he understood his salary would cover all of the hours that he worked is false in light of the Plaintiff's understanding that he would be working 50 hours per week.

Second, the FWW is not applicable because no overtime was paid at any rate (be it .5 or 1.5). A simple reading of section 778.114(a) illustrates this point. The conjunctive, "and," contained in the latter clause of section 778.114(a), clearly denotes that the FWW option only applies if the employee "receives" additional compensation "for all overtime hours worked at a rate not less than one-half his regular rate of pay." *Id.* The phrase, "if he receives extra compensation … for all overtime hours worked" is expressed in the present tense, meaning that in order for the FWW to apply; Defendants must have contemporaneously paid Plaintiff overtime at a pro-rated half-time rate. Moreover, Defendants do not dispute the fact that Plaintiff was not paid any overtime compensation after he was made a salaried employee and, despite asserting that the FWW is appropriate, make no effort to substantiate their position that this overtime criterion has been met. As such, failing to pay any overtime destroys the applicability of the FWW. *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 100 (D.D.C. 1998) (holding that payment of compensation in addition to the salary for all overtime hours worked is a *must*); *see also Griffen v. Wake County*, 142 F.3d 712, 715 (4th Cir. N.C. 1998) (approving use of fluctuating workweek method because employees were "paid an overtime premium of one-half their regular hourly rate for hours worked in excess of forty per week"); *see also Condo v. Sysco Corp.*, 1 F.3d 599 (7th Cir. Ill. 1993) (same); *see also Highlander v. K.F.C. Nat'l Management Co.*, 805 F.2d 644, 647–48 (6th Cir. 1986) (same); *see*

*also Conne v. Speedee Cash*, 2007 U.S. App. LEXIS 17480, *3-4 (5th Cir. July 23, 2007) (including requirement that employee receive additional compensation for overtime).

In *Rainey*, because it was clear that the defendant never paid overtime, the court concluded that contemporaneous payment of overtime compensation is a necessary prerequisite for application of the FWW and, as a matter of law, defendant failed to prove all the legal prerequisites of the FWW had been met. *Rainey*, 26 F. Supp. 2d at 100. The court explained that 29 C.F.R. §778.114(a) makes clear that the FWW can <u>only</u> be used if the employee "receives extra compensation, in addition to [the fixed] salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." *Id.* In *Costello v. Home Depot USA, Inc.*, the court explained that "an employee cannot achieve a clear, mutual understanding as to whether a fixed salary is intended to cover all hours worked **unless** that understanding includes **some provision for the payment of overtime**; without it, there is no understanding as to an "agreed wage." 2013 U.S. Dist. LEXIS 71196, *23 (D. Conn. May 13, 2013).

Third, the FWW is not applicable because Plaintiff's hours never fluctuated below 40. As the Fifth Circuit said in *Donovan v. Brown Equipment & Service Tools, Inc.*, "For hours to be considered irregular within the meaning of section 7(f), **they must, in a significant number of weeks, fluctuate both below forty hours per week as well as above**, and the fluctuations below forty **must** result from work requirements, **not** vacations, holidays, illness or reasons personal to the employee." Plaintiff never worked below 40 hours per week while he was a salaried employee. Rather, Plaintiff reaffirmed in his Response to the Court's Interrogatory Number 6(c) that he "averaged 14 hours daily and totaling 84 hours weekly." [DE #11].

For all these reasons the FWW does not apply in this case and Plaintiff had every reason to reject any settlement offers made to him that were based on a half-time valuation. It did not

matter how many hours the Plaintiff worked, he was not getting any more than $800.00 per week. As the Supreme Court reasoned in *Overnight Motor Transp. Co. v. Missel*, one of the intended effects of the FLSA "was to require extra pay for overtime work by those covered by the Act even though their hourly wages exceeded the statutory minimum." 316 U.S. 572, 577 (1942). This cannot be accomplished when no overtime premium is paid and allowing the FWW to be applied when no overtime premium is paid creates an exception to section 207(a) that would swallow the rule requiring employers to pay time and a half for overtime hours worked.

### C. Half-Time Damages Assessed In A Misclassification Case Are Prohibited.

In its July 15, 2013 Order, the Court found that the Plaintiff's initial valuation of the damages were unreasonable because he failed to use the FWW in calculating his damages. However, retroactively applying the FWW in a misclassification case is not permitted. The reasoning is obvious and twofold. As discussed above, one of the hallmarks of the FWW is a clear mutual understanding between the employer and employee that they will operate under this type of arrangement. You simply cannot have a clear mutual understanding that you are operating under the FWW when you don't operate under the FWW. Second, the regulations plainly envision the employee's *contemporaneous* receipt of a premium apart from his fixed wage. This cannot happen in a misclassification case and it did not happen here.[10] As noted by Judge Hall in *Perkins v. Southern New Eng. Tel. Co.*, "Because the employer in a misclassification case has necessarily not made any contemporaneous payment of overtime premiums, these courts [referring to those cited in the foregoing footnote] find that section

---

[10] *See Russell v. Wells Fargo & Co.*, 672 F.Supp. 2d 1008, 1013 (N.D. Cal. 2009); *see also Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 100–02 (D.D.C. 1998) (finding that as a matter of law, the employer cannot prove a clear mutual understanding or contemporaneous payment of overtime premiums in a misclassification case); *see also Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 678 (7th Cir. 2010) (Besides looking forward rather than backward, the interpretive rule plainly envisions the employee's **contemporaneous** receipt of a premium apart from his fixed wage for any overtime work he has performed."); 29 C.F.R. 778.114.

778.114 is inapplicable in a misclassification case. In addition, courts have found that assessing damages according to section 778.114 may actually frustrate the purposes of the FLSA.[11]

Just recently, in *Costello v. Home Depot USA, Inc.*, the court determined that it would be "illegal" for an employee to be able to agree to something other than the "default FLSA arrangement of a forty-hour workweek [which] must be compensated at one-and-a-half times." 2013 U.S. Dist. LEXIS 71196, *21–22 (D. Conn. May 13, 2013). The court explained that "[E]ven if [d]efendant could prove that [p]laintiffs and [d]efendant had a clear, mutual understanding that [p]laintiffs would work 50 hours a week without overtime pay, such an arrangement amounts to an agreement 'not to receive their FLSA entitlement to overtime pay. This would be illegal. Employees cannot agree to waive their right to overtime pay." *quoting Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1014 (N.D. Cal. 2009).

Further frustration to the FLSA is found if a court was to assess damages using the FWW method because it provides a perverse incentive to employers to misclassify workers as exempt, while denying employees the benefits of a fluctuating workweek and then attempt to avoid a windfall in damages for an employer who have been found liable in misclassifying employees under the FLSA by only paying half time.[12] As the Northern District of California said in *Russell v. Wells Fargo & Co.*, "Given the remedial purpose of the FLSA, it would be incongruous to allow employees, who have been illegally deprived of overtime pay, to be shortchanged further by an employer who opts for the discount accommodation intended for a

---

[11] *Perkins v. Southern New Eng. Tel. Co.*, 2011 U.S. Dist. LEXIS 109882 at *11–12 (D. Conn. Sept. 27, 2011). *See, e.g., In re Texas EZPawn Fair Labor Standards Act Litig.*, 633 F. Supp. 2d 395, 404–05 (W.D. Tex. 2008) (using a hypothetical situation to demonstrate that the FWW method may result in overtime compensation that is 375% lower than the traditional method, and asserting that using the FWW method to calculate damages in a misclassification case allows employers to 'escape the time and one-half requirement of the FLSA'.").

[12] *In re Texas EZPawn Fair Labor Standards Act Lit.*, 633 F. Supp. 2d at 404–05 ("[A]n employer could claim exempt status for an employee, withhold overtime, then after being held liable for failing to pay overtime, escape the time and one-half requirement of the FLSA.").

different situation." 2009 U.S. Dist. LEXIS 107044, *1014 (N.D. Cal. Nov. 17, 2009). The court further stated that "Employers cannot satisfy this requirements [referring to contemporaneous payment of half time], after having been found to violate section 207." *Id.*, citing the Supreme Court in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739–40 (1981). Even the Supreme Court in *Overnight Motor Transp. Co. v. Missel* rejected the idea that an employer could cure its FLSA violation through a fiction that it intended to comply with the law from the outset, noting: "Implication cannot mend a contract so deficient in complying with the law." *Overnight Motor Transp. Co.*, 316 U.S. at 581. Accordingly, Defendants did not meet the spirit nor four out of the five technical requirements (when it must meet all of them) in order for the Court to have summarily found, pursuant to its Order cutting the Plaintiff's attorney's fees by 88%, that Plaintiff's counsel, in not applying the FWW to Plaintiff's original damages calculations, was unreasonable and legally unsupported.

It is important for the Court to keep in mind that, in ruling upon this Motion, Plaintiff does not have to prove that the FWW did not apply to his case. Rather, the Plaintiff is simply showing the court, pursuant to the grounds justifying reconsideration under Fed. Civ. P. 59(e), that based on the case law cited above, Plaintiff's counsel was certainly entitled to request damages using the time and one-half valuation method, as provided by *29 U.S.C. § 207(a)*, because the FWW does not apply to this case. But more importantly, and for purposes of this Motion, it was certainly a legally and factually supported valuation and a reasonable calculation of damages, in line with both the law and facts of this case, that does not justify an 88% reduction in attorney's fees which amounts to a sanction against the Plaintiff's counsel.

III. **An 88% Reduction Of Attorney's Fees Is Inappropriate When Compared To Other Similar Cases And Amounts To A Sanction Against Plaintiff's Counsel For Demanding A Legally and Factually Supported Damages Calculation.**

Under the lodestar method, attorney's fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). There is a "'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)). Nevertheless, after determining the lodestar, the court must consider other factors, including the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). An award of attorney's fees can also be reduced for raising unsupported claims that prolong litigation and prevent settlement negotiations. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1286, 1288 (S.D. Fla. 2008). While reduced fee awards are proper in many cases, "[f]ee awards should not simply be proportionate to the results obtained," especially in FLSA cases, as fee awards in FLSA cases are often greater than the amount recovered by the plaintiff. *See James v. Wash Depot Holdings*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007). This is to ensure "that individuals with small claims can obtain representation necessary to enforce their rights." *Brandt v. Magnificent Quality Florals Corp.*, 2011 U.S. Dist. LEXIS 113195, 2011 WL 4625379 at *12 (S.D. Fla. 2011).

Moreover, degree of success under the FLSA cannot be measured purely in terms of monetary relief obtained. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. Fla. 2001) (discussing meaning of "degree of success" in a case under 42 U.S.C. §1988). By enacting the FLSA, Congress declared as policy its desire to "correct and as rapidly as practicable to eliminate" certain labor practices it found to be "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," including, among others, working in excess of 40 hours weekly without overtime pay.

*See 29 U.S.C. §§202, 207.* Other courts have observed that the FLSA is intended to both '"secur[e] to employees restitution of statutorily mandated wages,'" and to deprive violators of the use of the "unlawfully withheld compensation, … thereby "protect[ing] complying employers from the unfair wage competition of the noncomplying employers.'" *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1465 (C.D. Cal. 1996). Thus, when an employee succeeds on a claim under the FLSA to recover unpaid overtime wages, that employee vindicates not only his own personal interests, but also, the larger policy concerns embodied in the FLSA. As such, in determining the degree of success, the Court must not only look to the award recovered by the plaintiff, but must also factor in the vindication of public policy achieved by an award to the plaintiff, regardless of the amount. *Villano*, 254 F.3d at 1305–06. In other words, "a court must be careful not to place 'undue emphasis on the modest money damages' … because successful civil rights actions vindicate a public interest." *Id.* at 1306; *see also Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987) (an award of attorney's fees based on a straight proportion of the amount of damages obtained versus the amount sought is not appropriate).

As such, in the context of the FLSA, courts have been reluctant to reduce attorney's fees based solely on the results obtained. For example, in *Andriello v. CFI Sales & Marketing, Inc., et al.*, a case cited by the Defendants in their Response to Plaintiff's Motion for Award of Attorney's Fees, the court made an after-fact-reduction in the lodestar based on the totality of the circumstances, including the inclusion of time entries for work performed for unsuccessful plaintiffs, duplicative time entries, unreasonable clerical hours, responding to orders to show cause, and drafting a motion to dismiss which was never filed, as well as the results obtained versus the damages claimed. 2012 U.S. Dist. LEXIS 112671 (M.D. Fla. Aug. 10, 2012). Nonetheless, given all of these factors, including the fact that the ultimate recovery was only **3%**

of the damages claimed, the court still only reduced the lodestar by **70%**.

Likewise, in *Goss v. Killian Oaks House of Learning*, 248 F. Supp.2d 1162, 1168 (S.D. Fla. 2003), the court declined to award a prevailing party attorney's fees finding that "special circumstances" existed that "render[ed] an … award of attorney's fees unjust." In *Goss*, the plaintiff's counsel spent 49.1 hours litigating a claim for $316.00, of which 23.2 of those hours were litigated after "the case had settled due to full and complete payment of the claims." *Id.* at 1167–68. As such, the court found that the plaintiff's counsel acted in bad faith as the case could have settled without litigation and engaged in a pattern of behavior aimed at inflating the level of attorney's fees which "shock[ed] the conscience of the Court." *Id.* at 1168–69. In *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281 (S.D. Fla. 2008), another case cited by the Defendants in their Response to Plaintiff's Motion for Award of Attorney's Fees, the court reduced the plaintiff's requested attorney's fees by 67% because of, among other things, unrealistic and legally unsupportable damage calculations, unnecessarily hiring experts, forcing numerous pretrial hearings and briefings, and requiring the appointment of a special master. *Id.* at 1286. Besides making damages calculation with no legal or evidentiary foundation, based on a formula that the court had already rejected, the plaintiffs more than tripled their original damages demands during the course of litigation which delayed the resolution of the action for two years. *Id.* at 1287. Ultimately, even though plaintiffs recovered **2%** of their demands the court still only reduced their attorney's fees by **67%**. *Id.* at 1297. The Eleventh Circuit in *Popham v. City of Kennesaw*, also reduced attorney's fees by **67%** even though the plaintiff received only **1.5%** of the damages sought and prevailed on only one of eight claims asserted. 820 F.2d 1570 (11th Cir. 1987). There, the court noted that the reduction was due to plaintiff obtaining "only a miniscule fraction of the relief he [plaintiff] had requested…" and that much of the trial involved

matters that were unrelated to one claim that he prevailed in. *Id.* at 1579. The Defendants, in their Response to Plaintiff's Motion for Award of Attorney's Fees, asked the Court to order at least an 85% reduction in the Plaintiff's attorney's fee similar to the court in *Roldan v. Pure Air Solutions, Inc.*, 2010 U.S. Dist. LEXIS 12779 (S.D. Fla. 2010). However, the Defendants fail to point out that the court in *Roldan* reduced the attorney's fee by 85% because the billing records were related entirely to the overtime claim, which proved to be <u>unsuccessful</u>. *Id.* at *17.

The above cited cases illustrate the reluctance that courts have in reducing a plaintiff's attorney's fees in FLSA cases and the extraordinary circumstances that warrant a large reduction. None of those circumstances are present here. The Defendants' main argument for reducing the Plaintiff's lodestar was based directly on the proportion of the amount recovered, 11%, based on the misguided argument that Plaintiff's damages valuation was "unreasonable" thereby resulting in needless litigation. Putting aside the Defendants' arguments regarding the "reasonableness" of the Plaintiff's use of the time and a half method, which Plaintiff has fully addressed *supra*, the Defendants asked the Court to reduce the amount of attorney's fees based solely on the proportionality of the damages claimed versus the Plaintiff's ultimate recovery. However, the percentage recovered (11%) still does not justify an 88% reduction in attorney's fees, especially in light of Plaintiff's legally supported arguments regarding the proper method of valuation under the FLSA. A brief glance at similar cases illustrates this point:

| Case | % of Recovery | Reduction in Lodestar |
|---|---|---|
| *Brandt v. Magnificent Quality Florals Corp.*, 2011 U.S. Dist. LEXIS 113195 (S.D. Fla. 2011) | 2.10% | 70% |
| *Gary v. Health Care Services, Inc.*, 744 F.Supp. 277 (M.D. Ga. 1990) | 5.10% | 60% |

| | | |
|---|---|---|
| *Rios v. Benvenuto*, 2012 U.S. Dist. LEXIS 173161 (M.D. Fla. Nov. 1, 2012) | 18% | 0% |
| *Andriello v. CFI Sales & Marketing, Inc., et al.*, 2012 U.S. Dist. LEXIS 112671 (M.D. Fla. Aug. 10, 2012) | 3% | 70% |
| *Powell v. Carey Int'l, Inc.*, 2008 U.S. Dist. LEXIS 32664 (S.D. Fla. Mar. 12, 2008) | 3% | 67% |
| *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007) | Less than .5% | 50% |
| *Reppert v. Mint Leaf, Inc.*, 2013 U.S. Dist. LEXIS 17105 (S.D. Fla. 2013) | 6.25% | 25% |
| *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987) | 1.50% | 67% |
| *Bozeman v. Port-O-Tech Corp.*, 2008 U.S. Dist. LEXIS 124136 (S.D. Fla. 2008) | 11% | 25% |

Moreover, during the course of litigation the Plaintiff reduced his demand from roughly $80,000.00 to $40,000.00, half of what he originally sought, in an attempt to negotiate a settlement. As such, Plaintiff actually recovered 22% of the amount claimed. Nonetheless, an 88% reduction in the amount of attorney's fees incurred is clearly excessive in light of the cases presented above in which the plaintiff's counsel were guilty of, among other things, requesting attorney's fees on claims that were unsuccessful, tripling their damages claims without any legal or factual support, artificially inflating attorney's fees, and continuing to litigate after the case was settled. Despite this egregious behavior, the courts in those cases <u>still</u> did not reduce the attorney's fees requested by 88% which amounts to a sanction against the Plaintiff's counsel who have not engaged in any bad faith litigation nor artificially driven up their fees.

Furthermore, the cases illustrated above show that even when the plaintiffs recovered far less than what was received the attorney's fees were not reduced by any more than 70%. The closest reduction in terms of percentage to the 88% reduction applied here was in *Roldan*, where

the lodestar was reduced by 85%, because the attorney's fees were incurred litigating an *unsuccessful* claim. *Roldan*, 2010 U.S. Dist. LEXIS at *17. Indeed, in *Bozeman*, the plaintiff recovered the same percentage, 11%, as was recovered in this case, pursuant to the Plaintiff's initial valuation, and the court only reduced the lodestar by 25%. *Bozeman v. Port-O-Tech Corp.*, 2008 U.S. Dist. LEXIS 124136 (S.D. Fla. Dec. 18, 2008). The only reason why the Court reduced the Plaintiff's attorney's fees was because it found that Plaintiff's counsel should have used the FWW method of calculating the Plaintiff's damages. Yet, as outlined above, Plaintiff's position was clearly supported by both legal and factual authority and Plaintiff's counsel should not be punished for zealously advocating for their client based upon a legal position that they believe would have succeeded had they sought summary judgment on the issue.

Nonetheless, in its Order the Court stated that the Plaintiff's applied a legally unsupported valuation without delineating any basis for why the FWW should have been applied. Although Plaintiff's counsel strongly believe that the FWW is not applicable, for reasons set forth *supra*, even if they felt it was a close call they owed the Plaintiff an obligation to calculate his damages based on the time-and-a-half method. This is because the difference between the FWW method and the time-and-a-half method can result in an employee being paid seventy-one percent less for overtime over a given year. *See Russell*, 672 F.Supp.2d at 1012. Because the Plaintiff believes, both today and at the inception of this case, that the FWW does not apply, it would have been unethical and incongruous with the remedial purposes of the FLSA to simply take the Defendants' word that the FWW applied and have the Plaintiff, who had already been illegally deprived of overtime pay, to again be shortchanged further by an employer who opts for the discount accommodation intended for a different situation. *Id.* at 1014. Therefore, the Court's Order, which punishes the Plaintiff by reducing his attorney's fees by

88%, is clearly an erroneous ruling and should be corrected not only to prevent manifest injustice to the Plaintiff but also to the public at large for whom the FLSA was enacted to protect.

## IV. Because The Defendants Refused To Pay The Plaintiff's Attorney's Fees As Part Of Their Settlement Offers Plaintiff Had No Obligation To Accept Those Offers As The Plaintiff's Attorney's Fees Are Part Of His FLSA Claim.

To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, Congress has permitted individual employees to sue for back wages, liquidated damages and to receive reasonable attorney's fees and costs. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709 (1945). Title 29 U.S.C. §216(b) authorizes a prevailing plaintiff in an FLSA case to recover attorney's fees and costs. The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1999). By failing to pay a plaintiff's attorney's fees a defendant could effectively reduce a plaintiff's recovery by its delay because the longer the defendant waited to tender a reasonable settlement amount the more attorney's fees and costs the plaintiff would incur. Therefore, simply tendering an amount of money for back wages and liquidated damages does not make a plaintiff whole but, rather, allows a defendant to use its superior leverage to close the courtroom door in FLSA cases which is antithetical to the purposes of the FLSA. *See Reed v. TJX Cos.*, 2004 U.S. Dist. LEXIS 21605 at *8–9 (N.D. Ill. 2004).

There is no dispute that the Plaintiff is the prevailing party in this case and, in addition to his unpaid wages, an integral part of the Plaintiff's recovery is his attorney's fees which cannot be considered as "costs" incident to recovery. *Caperna v. Williams-Bauer Corp.*, 185 Misc. 687 (N.Y. City Ct. 1945); *see also Ferraro v. Arthur M. Rosenberg Co.*, 156 F.2d 212 (2d Cir. Conn. 1946) (finding that an award of attorney's fees pursuant to 29 U.S.C. §216(b) is not made to

plaintiff's attorney, but is part of judgment recovered by employee, to whom attorney must look for payment.). In order to be a prevailing plaintiff, a plaintiff must only "obtain some relief on the merits of his claim," which can arise from a judgment on the merits as well as a settlement agreement enforced through a consent decree, as both are "court ordered changes in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. and Care Home Inc., v. West Virginia Dept. of Health and Human Services*, 532 U.S. 598, 604 (2001). Unquestionably, attorney's fees are part of the damages to which Plaintiff is entitled under the FLSA. If Plaintiff was not to receive all of his attorney's fees and costs, in addition to back wages and liquidated damages, then he would be liable for his own attorney's fees in direct contradiction to the requirements of the FLSA. Indeed, where a defendant simply offers a lump sum settlement offer to a plaintiff it creates a conflict between the plaintiff and his or her counsel regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs. *See Sperling v. Grp. Travel Consultants, Inc.*, 2010 U.S. Dist. LEXIS 137965, *6 (M.D. Fla. Dec. 21, 2010) (noting that "[t]his potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary."). Such was the case here.[13]

An early settlement resolution did not occur in this case but for one reason: Defendants refused to pay the Plaintiff's mandatory attorney's fees and costs and made no offers whatsoever to let the Court decide the amount of attorney's fees and costs that should be awarded to the Plaintiff. Exhibit D of their Response to Plaintiff's Motion for Award of Attorney's Fees and

---

[13] At the outset, Plaintiff recognizes a general policy that protects the confidentiality of statements exchanged during settlement negotiations. *See, e.g., Bedoya v. Aventura Limo. & Transp. Serv., Inc.*, 2012 U.S. Dist. LEXIS 68322 (S.D. Fla. May 16, 2012) (making reference to the "strong policy in favor of the confidentiality of the medium of settlement negotiation itself."). This general policy promotes parties' openness to engaging in discussions to effectively and efficiently resolve their own disputes. Nonetheless, Plaintiff is forced to reveal otherwise confidential settlement discussions in order to present the Court with a complete and accurate portrayal of the settlement negotiations that occurred in this case.

Costs (DE # 32-4) is just one example of Defendants' stubborn refusal to fully compensate Plaintiff for his attorney's fees. On August 31, 2012, Defendants made an offer to the Plaintiff of $15,754.16 of which $2,350.00 was to be allocated to Plaintiff's attorney's fees. Plaintiff's counsel, Mitchell Feldman, responded to Defendants' counsel's email by reducing the Plaintiff's settlement demand by half, to $40,000.00, and stating that the attorney's fees and costs incurred to that point were $8,750.00. *See* DE # 32-4. Had the Plaintiff accepted the Defendants' $15,754.16 settlement offer, which the Court determined that he should have, the Plaintiff would have recovered **less** than what he ended up settling for or $15,754.16 - $8,750.00 = $7004.16 v. the $8,800.00 Plaintiff ultimately settled for. Moreover, Defendants completely ignored the issue of attorney's fees raised by Plaintiff's counsel. Throughout the litigation Plaintiff's counsel continually apprised the Defendants of the Plaintiff's attorney's fees as they continued to increase and urged Defendants' counsel to settle the Plaintiff's wage claim and let the Court decide the proper amount of attorney's fees. Nonetheless, Defendants insistently made settlement offers to the Plaintiff in lump sum amounts without accounting for his attorney's fees. *See* correspondence between Plaintiff's and Defendants' counsel on May 29, 2013, attached at **Exhibit "D."** As the email exchange shows, the Defendants made a lump settlement offer of $10,000.00 when the Plaintiff's attorney's fees and costs had increased to $62,500.00 which would have left the Plaintiff with a total recovery of $0. Nonetheless, Defendants made no effort in their settlement offers to account for the Plaintiff's attorneys fees which are <u>mandatory</u> in FLSA cases. In fact, the only reason this case was eventually settled was because Plaintiff's counsel insisted on having the Court decide what reasonable attorney's fees Plaintiff was entitled to. *See* correspondence between Plaintiff's and Defendants' counsel on May 31, 2013, attached as **Exhibit "E."** As such, Plaintiff should not be punished for refusing to accept settlement

offers that were not only was in contravention of the FLSA but would have left Plaintiff with less, or no, recovery whatsoever compared to what he eventually agreed to settle for.

**V.     Plaintiff Is Entitled To Recover The Costs He Incurred In This Action Because He Was Forced To Litigate His Claim Due To Defendants' Unreasonable Settlement Offers, Which Did Not Include His Attorney's Fees And Were Based Upon A Misapplication Of The FWW.**

Pursuant to the FLSA and Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. A strong presumption exists in favor of awarding costs. *Id.* A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1985) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920). There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006). "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Quintanilla v. A&R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, 2007 WL 5166849, at *9 (S.D. Tex. May 7, 2008). Costs such as court-reporter fees, copying fees, and docket fees, are similarly compensable under 28 U.S.C. § 1920. The plaintiffs cost claims are all compensable under Rule 54(d). (DE # 29-4).

Nonetheless, the Court reduced the award of costs to the Plaintiff from his requested amount of $8,522.49 to $535.55 for the same reasons that it reduced the Plaintiff's award of attorney's fees. (DE # 34). However, the Court did not find that the Plaintiff, or his counsel, engaged in any bad faith litigation and, as such, Plaintiff should not have been punished by not

being awarded his costs. This is a harsh sanction against the Plaintiff who is liable for the costs of litigation and the Court's Order essentially leaves the Plaintiff with a net zero recovery. Nonetheless, the same arguments made *supra* for reconsidering its decision to reduce the Plaintiff's award of attorney's fees also apply to its decision to reduce the Plaintiff's award of costs and Plaintiff will not repeat the same arguments made here.

However, it is worth noting again that Defendants could have stopped defending against the Plaintiff's claims at any time and have the Court decide the proper award of attorney's fees to the Plaintiff. Rather, Defendants represented to the Court, in their Response to Plaintiff's Motion for Award of Attorney's Fees, that "[w]hat prevented settlement of the instant lawsuit at all stages of litigation was Plaintiff's long-held and improper valuation of this misclassification case…" Such a statement is both misleading and false. The Defendants contentiously defended against the Plaintiff's FLSA claim every step of the way. For Defendants to represent that the only reason litigation ensued for 9 months was Plaintiff's counsel's improper valuation of the Plaintiff's damages is both disingenuous and false. Moreover, if Defendants argue that by settling the case Plaintiff admits that the half-time method applies then it is only fair to conclude that by settling Defendants admit that Plaintiff did work the hours he claimed and was non-exempt. As such, Defendants engaged in bad faith litigation thereby incurring extra fees and costs on both sides. Clearly, such a position is preposterous and contrary to the Eleventh Circuit's policy of promoting and encouraging settlement of litigation. *See Lynn's Food Stores, Inc. v. United States of America*, 679 F.2d 1350, 1354 (11th Cir. 1982). By reducing the Plaintiff's attorney's fees and costs the Court essentially sanctions the Plaintiff's counsel whose costs of $7,986.94 exceeded their attorney's fees of $7,175.00. Such a result is contrary to the statutory purpose of the fee provision incorporated into the FLSA which is "to insure effective

access to the judicial process by providing attorney's fees for prevailing plaintiff's with wage and hour grievances." *United Slate,* 732 F.2d at 502.

**CONCLUSION**

By drastically reducing the Plaintiff's attorney's fees and costs because Plaintiff refused to settle his claim at the inception of his lawsuit, prior to any substantial developments in the case except for the filing of his Complaint and based on the Defendant's erroneous application of the law, the Court has created a disincentive for every plaintiff's counsel in an FLSA case to effectively represent their client for fear of not being awarded attorney's fees. Moreover, the Court erroneously applies a standard of law without any evidentiary hearing and without being fully briefed on the issues by either party. Rather, the Court simply takes the Defendants' self-serving assertion that the FWW applies to this case and that by settling his claim the Plaintiff has admitted as much. Such a ruling sets a dangerous precedent and puts an attorney and his or her client in an adversarial conflict whereby the attorney must choose between looking to his client for his attorney's fees and costs, whereby the client would be left with little to no recovery, or working for little to no compensation. Such a precedent is incongruous with the purpose behind the FLSA which was designed to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §202(a).

**WHEREFORE**, Plaintiff, JOHN ANDERSON, respectfully requests that this Court grant Plaintiff's Motion for Reconsideration and Rehearing in order to correct clear error or manifest injustice and award Plaintiff his reasonable attorney's fees and costs sought in his Motion for Award of Attorney's Fees and Costs in light of the additional facts and legal authority presented to this Court.

## <u>RULE 3.01(g) CERTIFICATION</u>

Pursuant to Rule 3.01(g), Local Rules, Middle District of Florida, Plaintiff's counsel conferred

with Defendants' counsel who oppose the relief sought herein.


Dated: August 7, 2013.

> */s/ Mitchell L. Feldman*
> MITCHELL L. FELDMAN, ESQUIRE
> Florida Bar No. 0080349
> FELDMAN & MORGADO, P.A.
> 501 North Reo Street
> Tampa, Florida 33609
> Tele: (813) 639-9366
> Fax: (813) 639-9376
> E-mail: MFeldman@ffmlawgroup.com
> Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was furnished via e-mail to

David Gobeo, Esq., Jackson Lewis P.A., (david.gobeo@jacksonlewis.com), Attorneys for the

Defendant, on this 7th day of August, 2013.